UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HANS MORALES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KATHLEEN ALLISON, et al.,<br><br>　　　　　Defendants. | Case No. 1:22-cv-00171-CDB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS DEFENDANTS ALLISON AND DOE DEFENDANT SECRETARY AND TO ALLOW ACTION TO PROCEED ON PLAINTIFF'S REMAINING CLAIMS**<br><br>(Doc. 13)<br><br>**14-DAY OBJECTION PERIOD**<br><br>Clerk of the Court to Assign District Judge |

Plaintiff David Hans Morales is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action.

On February 3, 2023, the Court issued its First Screening Order. (Doc. 12.) The Court found Plaintiff failed to state a claim against any named defendant and Plaintiff was given leave to file a first amended complaint. (*Id*. at 4-12.)

On February 24, 2023, Plaintiff filed his first amended complaint. (Doc. 13.)

**I.　　SCREENING REQUIREMENT**

Plaintiff is proceeding *in forma pauperis,* and his complaint is therefore subject to screening under 28 U.S.C. § 1915(e)(2)(B). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §

1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## II.     PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942

F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### D. Doe Defendants

Although the use of Doe defendants is generally disfavored, "'the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities ...'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 E.2d 637, 642 (9th Cir. 1980)).

## III. DISCUSSION

### A. Plaintiff's First Amended Complaint

Plaintiff names the following individuals as defendants in this action:

Kathleen Allison, Director, California Department of Corrections and Rehabilitation

John Doe, Secretary, California Department of Corrections and Rehabilitation

John Doe, Warden, Pleasant Valley State Prison (PVSP)

John Doe, Facility B Captain at PVSP

John Doe, Facility B Lieutenant at PVSP

John Doe, Facility C Captain at PVSP

John Doe, Facility C Lieutenant at PVSP

John Doe, Facility C Sergeant at PVSP

John Doe, Facility B Sergeant at PVSP

Mr. Phillips, Correctional Officer, Facility B, Bldg. 3, PVSP

1  Ms. Rodriguez, Correctional Officer, Facility B, Bldg. 3, PVSP

2  Ms. Hernandez, Correctional Officer, Facility B, Bldg. 3, Tower, PVSP

3  O. Onyehe, Chief Medical Executive, PVSP

4  Ifeoma Oghuehi, Nurse Practitioner, Facility B, PVSP

(Doc. 13 at 1, 3-4.) Plaintiff asserts Eighth Amendment failure to protect claims against all named defendants. (*Id*. at 4.) He seeks $100,000 in damages. (*Id*. at 10.)

### B. Factual Allegations

Plaintiff contends Defendants Allison, Doe CDCR Secretary, Doe PVSP Warden and Onyehe failed to have protocols in place at PVSP at the start of the COVID-10 pandemic "on March 11, 2020, that follow recommendations for quarantines set forth by the California Department of Public Health and the Centers for Disease Control and Prevention." (Doc. 13 at 4.) Plaintiff alleges such protocols would have "slowed down the spread" of COVID-19 at PVSP in Building 3 of Facility B, and "triggered baseline testing of all staff at PVSP, in turn would have prevented Plaintiff from contracting the deadly virus." (*Id*. at 4-5.)

Plaintiff asserts Defendants Phillips, Rodriguez and Hernandez entered Facility B in October and November 2020 and spread the COVID-19 virus "throughout the whole building B3, and not informing Medical and Supervisory staff at the institution entrance, that they were infected," as required. (Doc. 13 at 5.) Plaintiff contends Phillips and Rodriguez were floor officers and "had verbal conversations with Plaintiff and many other inmates in the building office and dayroom floor, knowing they were infected and spreading the virus, as they clearly had symptoms of the virus, with dry coughing and difficulty breathing while talking." (*Id*. at 5-6.) Plaintiff maintains "many officers were stating that all these officers infected Building 3." (*Id*. at 6.)

Plaintiff contends he asked Hernandez to turn off three fans attached to the observation tower, "blowing in each section of the building dayroom, because he is spreading the virus." (Doc. 13 at 6.) Hernandez replied he could not do so, but Plaintiff asserts Hernandez "had control of the on and off switch in the tower, because the building fans are only supposed to go on automatically when the exterior temperature excess 90º in the summer months." (*Id*.) Plaintiff

contends Hernandez knew "he, Mr. Phillips and Ms. Rodriguez had contracted" the virus and "exposed the building to the virus and that the building fans would further spread the virus in the building and expose Plaintiff and other housed" there. (*Id.*) Plaintiff asserts there were no contact visits permitted at that time "and it had already been predicted that staff would carry the virus into the prison setting." (*Id.*) He contends Hernandez "announced over the Observation Tower, Public Address (PA) system that he had contracted" the virus. (*Id.*)

Plaintiff asserts Defendants Doe Facility B Captain, Lieutenant and Sergeant, as well as Onyehe and Oghuehi, were aware that Defendants Phillips, Rodriguez and Hernandez had tested positive but failed to "lockdown/quarantine" the building and "instead let the virus spread further." (Doc. 13 at 7.) He also contends "no contact tracing protocol was implemented" in that building or any other building in the facility. (*Id.*)

On November 17, 2020, Plaintiff tested negative for the virus while housed in "B3-103 low." (Doc. 13 at 8.)

Plaintiff alleges that on November 19, 2020, when "Facility B3 inmates tested positive" for the virus and were authorized to be moved to "Facility D5 or any other facility at PVSP" by Defendants Doe Facility B Captain, Lieutenant and Sergeant, and Onyehe and Oghuehi, there were no designated quarantine buildings "so inmates were being moved anywhere there was empty cells and the virus was being spread throughout the PVSP facilities." (Doc. 13 at 7.)

On November 21, 2020, Plaintiff contends several Facility C inmates were authorized to move to Facility B3 by Defendants Doe Warden, Doe Facility C Captain, Lieutenant and Sergeant, and Onyehe. (Doc. 13 at 7.) However, the Facility C inmates were COVID-19 positive rather than negative, and infected inmates in Facility B3, including Plaintiff. (*Id.*)

Plaintiff states that all inmates housed in his building showered in the same stalls with Facility C inmates "with no disinfecting after each use, and were able to move freely in the building dayroom on showers days on Monday, Wednesdays and Fridays while fans were blowing in the building B3." (Doc. 13 at 7-8.)

On November 30, 2020, Plaintiff tested positive for COVID-19, as did several of the Facility C inmates moved on November 21. (Doc. 13 at 8.) Plaintiff contends he was "rehoused in

6

C4 after being forcefully marched to the off-facility quarantine building in C4, in which the PVSP Administration barely designated on 12/3/2020." (*Id*.) He asserts no medical transportation was provided on December 3, 2020 and he was exhausted by the "[f]orced march." (*Id*.) Plaintiff maintains "[p]ractically all the inmates that came from C4 to B3 on 11/21/2020 went back to C4 due to positive" COVID-19 tests. (*Id*.)

On December 10, 2020, Plaintiff was returned to B3 when "the same defendants from Facility B & C as well as the Warden approved B3 as a Quarantine building." (Doc. 13 at 8.) Plaintiff still suffered from virus symptoms like "coughing and short of breath with no medical staff present." (*Id.*) An x-ray on December 15, 2020, ordered by Defendant Oghuehi, showed COVID-19 pneumonia. (*Id*.) Plaintiff contends he was "constantly stating he wanted an x-ray on his lungs and chest since he was having complications with breathing properly." (*Id*.) He asserts he "would never have been exposed if [he] would not have been persistent in getting them done." (*Id*.)

On December 23, 2020, Defendant Oghuehi wanted to release Plaintiff from quarantine despite Plaintiff still having COVID-19 symptoms and "no swab test was going to be given upon release." (Doc. 13 at 8-9.) Further, Plaintiff contends other inmates were "still having symptoms … and testing positive for the virus on a daily basis, so Plaintiff refused to be removed from quarantine …." (*Id*. at 9.)

Plaintiff asserts it is "as if Facility B Medical and Custody wanted the virus to conceive more deadly variants throughout the facility without regards for Plaintiff's health." (Doc. 13 at 9.) He contends he could die prematurely from the damage caused by COVID-19 "mixed with his underlying health condition (high blood pressure)." (*Id*.) He states his exposure to COVID-19 "was not part of the sentence that the judge handed down to Plaintiff at his sentencing hearing for his committment [sic] offense." (*Id*.) Plaintiff contends the virus is "still being brought in by staff and is floating around the CDCR system in California and there is no telling when Plaintiff could be exposed against and lose his breathing for good." (*Id.*)

### C. Plaintiff's Claims

The Court construes Plaintiff's first amended complaint to assert Eighth Amendment failure to protect claims against all named defendants.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993); *Farmer*, 511 U.S. at 832. The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). A prison official violates the Eighth Amendment only when objectively, the official's act or omission is so serious such that it results in the denial of the minimal civilized measure of life's necessities; and subjectively, the prison official acted unnecessarily and wantonly for the purpose of inflicting harm. *See Farmer*, 511 U.S. at 834. Thus, a prison official must have a "sufficiently culpable mind." *Id*.

Under these principles, prison officials have a duty to take reasonable steps to protect inmate' safety. *Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982). Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. *Farmer*, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. *Farmer*, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison

officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. *Farmer*, 511 U.S. at 844.

First, liberally construing the first amended complaint, Plaintiff has plausibly alleged Eighth Amendment failure to protect claims against Defendants Phillips, Rodriguez and Hernandez. This is so because Plaintiff alleges that he was incarcerated during the COVID-19 pandemic in October and November 2020 when these individuals knew they were COVID-19 positive yet disregarded the risk presented by failing to report themselves or to quarantine. *Farmer*, 511 U.S. at 837; *Wallis*, 70 F.3d at 1077.

Second, liberally construing the first amended complaint, Plaintiff has plausibly alleged Eighth Amendment failure to protect claims against Defendants Doe Facility B Captain, Lieutenant and Sergeant, as well as Onyehe and Oghuehi. This is so because Plaintiff specifically asserts these individuals were aware that Defendants Phillips, Rodriguez and Hernandez had tested positive for COVID-19 but failed to take action by locking down or quarantining the building, allowing the virus to continue to spread.

Third, liberally construing the first amended complaint, Plaintiff has plausibly alleged Eighth Amendment failure to protect claims against Defendants Doe Warden, Doe Facility C Captain, Lieutenant and Sergeant, and Onyehe. This is so because Plaintiff contends these individuals authorized a move of Facility C inmates, with knowledge that the Facility C inmates had tested positive for COVID-19, into the B facility where Plaintiff was housed, resulting in Plaintiff contracting COVID-19 about nine days later.

However, even liberally construing the first amended complaint, Plaintiff has failed to plausibly allege Eighth Amendment failure to protect claims against Defendants Allison or Doe CDCR Secretary. Plaintiff's vague and conclusory assertions that these individuals "failed to have protocols in place" that would have slowed the spread of the virus and triggered "baseline testing" are insufficient to state a claim. *Ivey*, 673 F.2d at 268. Nor has Plaintiff sufficiently demonstrated the constitutional deprivation he suffered "resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy*, 594 F.3d at 713. He offers no facts indicating Defendants Allison or Doe CDCR Secretary "participated in or

9

directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045. *See also Iqbal*, 556 U.S. at 678 (the "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short).

In sum, the Court finds Plaintiff has plausibly alleged Eighth Amendment failure to protect claims against the following:

> John Doe, Warden
>
> John Doe, Facility B Captain
>
> John Doe, Facility B Lieutenant
>
> John Doe, Facility B Sergeant
>
> John Doe, Facility C Captain
>
> John Doe, Facility C Lieutenant
>
> John Doe, Facility C Sergeant
>
> Correctional Officer Phillips
>
> Correctional Officer Rodriguez
>
> Correctional Officer Hernandez
>
> O. Onyehe
>
> Ifeoma Oghuehi

However, Plaintiff has failed to state any cognizable claim against Defendants Allison and Doe CDCR Secretary. Because Plaintiff has previously been afforded an opportunity to correct the deficiencies regarding his claims against these officials (*see* Doc. 12 at 7) and because it appears granting leave to amend would be futile, the Court will recommend these individuals be dismissed from the action. *See Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013).

Finally, Plaintiff is reminded that although the use of Doe defendants is generally disfavored, "'the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities ...'" *Wakefield*, 177 F.3d at 1163. However, even where the Court may allow limited discovery in this action to provide Plaintiff an opportunity to discover the identities of the unknown defendants—

because the United States Marshal cannot serve Doe defendants and it is Plaintiff's responsibility to provide sufficient information to allow for service of process—Plaintiff is encouraged to ascertain the names or other identifying information concerning the Doe defendants to the best of his ability prior to any future order from the Court.

### IV.  CONCLUSION AND RECOMMENDATIONS

The Clerk of the Court is **DIRECTED** to assign a district judge to this action. Further, for the reasons set forth above, the Court **RECOMMENDS**:

1. That Plaintiff's first amended complaint **PROCEED** *only* on the Eighth Amendment failure to protect claims against the following individuals employed at PVSP:

    John Doe, Warden

    John Doe, Facility B Captain

    John Doe, Facility B Lieutenant

    John Doe, Facility B Sergeant

    John Doe, Facility C Captain

    John Doe, Facility C Lieutenant

    John Doe, Facility C Sergeant

    Correctional Officer Phillips

    Correctional Officer Rodriguez

    Correctional Officer Hernandez

    O. Onyehe

    Ifeoma Oghuehi;

2. That any remaining claims in Plaintiff's first amended complaint be **DISMISSED**; and

3. That named Defendants Allison and Doe CDCR Secretary be **DISMISSED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the

11

Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 2, 2023**                    _____
                                                  UNITED STATES MAGISTRATE JUDGE