# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HANS MORALES,<br>Plaintiff,<br>v.<br>ALLISON, *et al.*,<br>Defendants. | Case No. 1:22-cv-00171-KES-BAM (PC)<br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>(ECF NO. 58)<br>**FOURTEEN (14) DAY DEADLINE** |

## FINDINGS AND RECOMMENDATIONS

### I. Background

Plaintiff David Hans Morales is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds against thirty defendants, including 28 custody officials at Pleasant Valley State Prison,[1] a treating medical

[1] (1) Ron Godwin, Warden; (2) R. Kuhn, Retired Captain; (3) D. Davis, Lieutenant; (4) D. Marquez III, Lieutenant; (5) M. Solis, Retired Lieutenant; (6) A. Salas, Lieutenant; (7) J. Rios, Lieutenant (now at Avenal State Prison); (8) J. Teater, Retired Lieutenant; (9) N. Greene Jr., Sergeant; (10) E. Molina, Lieutenant; (11) J. Elizalde III, Sergeant; (12) C. Kerber, Sergeant; (13) J. Montano, Sergeant; (14) D. Cardenas, Sergeant; (15) C. Caldera, Sergeant; (16) J. Black, Sergeant; (17) J. Melendez, Captain; (18) R. Ledesma, Lieutenant (now at Valley State Prison); (19) J. Fogal, Retired Captain; (20) L. Ybarra, Retired Lieutenant; (21) T. Verbeek, Lieutenant; (22) A. Desfosses, Lieutenant; (23) J. Martin, Lieutenant; (24) T. Ramos, Sergeant; (25) A. Davidson, Sergeant; (26) Phillips, Retired Officer; (27) Rodriguez, Correctional Officer; and (28) Hernandez, Correctional Officer.

provider, Nurse Practitioner Ogbuehi, and a medical executive, O. Onyehe, for an alleged failure to protect from COVID-19 exposure.

On October 2, 2025, Defendants, with the exception of Nurse Practitioner Ogbuehi, filed a motion for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies against them before filing his lawsuit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).[2] (ECF No. 58.) Plaintiff opposed the motion on January 20, 2026, (ECF No. 61), and Defendants replied on February 3, 2026, (ECF No. 64).

The motion for summary judgment is deemed submitted.[3] Local Rule 230(l).

## II. Defendants' Motion for Summary Judgment

### A. Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino v. Baca*, 747 F.3d 1152, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. *Id.*

---

[2] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 58-6.)

[3] On January 28, 2026, the Court reassigned the matter to the undersigned magistrate judge for the issuance of findings and recommendations. (ECF No. 63.)

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendants. *Id.* (quotation marks omitted).

**B. Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

The defendant bears the burden of proof in moving for summary judgment for failure to exhaust, *Albino*, 747 F.3d at 1166, and he must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172. If the defendant carries his burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166.

## III. Discussion

### A. Summary of Allegations in First Amended Complaint

Plaintiff contends . . . Allison, Doe CDCR Secretary, Doe PVSP Warden and Onyehe failed to have protocols in place at PVSP at the start of the COVID-10 pandemic "on March 11, 2020, that follow recommendations for quarantines set forth by the California Department of Public Health and the Centers for Disease Control and Prevention." (Doc. 13 at 4.) Plaintiff alleges such protocols would have "slowed down the spread" of COVID-19 at PVSP in Building 3 of Facility B, and "triggered baseline testing of all staff at PVSP, in turn would have prevented Plaintiff from contracting the deadly virus." (*Id.* at 4-5.)

Plaintiff asserts Defendants Phillips, Rodriguez and Hernandez entered Facility B in October and November 2020 and spread the COVID-19 virus "throughout the whole building B3, and not informing Medical and Supervisory staff at the institution entrance, that they were infected," as required. (Doc. 13 at 5.) Plaintiff contends Phillips and Rodriguez were floor officers and "had verbal conversations with Plaintiff and many other inmates in the building office and dayroom floor, knowing they were infected and spreading the virus, as they clearly had symptoms of the virus, with dry coughing and difficulty breathing while talking." (*Id.* at 5-6.) Plaintiff maintains "many officers were stating that all these officers infected Building 3." (*Id.* at 6.)

Plaintiff contends he asked Hernandez to turn off three fans attached to the observation tower, "blowing in each section of the building dayroom, because he is spreading the virus." (Doc. 13 at 6.) Hernandez replied he could not do so, but Plaintiff asserts Hernandez "had control of the on and off switch in the tower, because the building fans are only supposed to go on automatically when the exterior temperature excess 90º in the summer months." (*Id.*) Plaintiff contends Hernandez knew "he, Mr. Phillips and Ms. Rodriguez had contracted" the virus and "exposed the building to the virus and that the building fans would further spread the virus in the building and expose Plaintiff and other housed" there. (*Id.*) Plaintiff asserts there were no contact visits permitted at that time "and it had already been predicted that staff would carry the virus into the prison setting." (*Id.*) He contends Hernandez "announced over the Observation Tower, Public Address (PA) system that he had contracted" the virus. (*Id.*)

Plaintiff asserts Defendants Doe Facility B Captain, Lieutenant and Sergeant, as well as Onyehe and Oghuehi, were aware that Defendants Phillips, Rodriguez and Hernandez had tested positive but failed to "lockdown/quarantine" the building and "instead let the virus spread further." (Doc. 13 at 7.) He also contends "no contact tracing protocol was implemented" in that building or any other building in the facility. (*Id.*)

On November 17, 2020, Plaintiff tested negative for the virus while housed in "B3-103 low." (Doc. 13 at 8.)

Plaintiff alleges that on November 19, 2020, when "Facility B3 inmates tested positive" for the virus and were authorized to be moved to "Facility D5 or any other facility at PVSP" by Defendants Doe Facility B Captain, Lieutenant and Sergeant, and Onyehe and Oghuehi, there were no designated quarantine buildings "so inmates were being moved anywhere there was empty cells and the virus was being spread throughout the PVSP facilities." (Doc. 13 at 7.)

> On November 21, 2020, Plaintiff contends several Facility C inmates were authorized to move to Facility B3 by Defendants Doe Warden, Doe Facility C Captain, Lieutenant and Sergeant, and Onyehe. (Doc. 13 at 7.) However, the Facility C inmates were COVID-19 positive rather than negative, and infected inmates in Facility B3, including Plaintiff. (*Id.*)
>
> Plaintiff states that all inmates housed in his building showered in the same stalls with Facility C inmates "with no disinfecting after each use, and were able to move freely in the building dayroom on showers days on Monday, Wednesdays and Fridays while fans were blowing in the building B3." (Doc. 13 at 7-8.)
>
> On November 30, 2020, Plaintiff tested positive for COVID-19, as did several of the Facility C inmates moved on November 21. (Doc. 13 at 8.) Plaintiff contends he was "rehoused in C4 after being forcefully marched to the off-facility quarantine building in C4, in which the PVSP Administration barely designated on 12/3/2020." (*Id.*) He asserts no medical transportation was provided on December 3, 2020 and he was exhausted by the "[f]orced march." (*Id.*) Plaintiff maintains "[p]ractically all the inmates that came from C4 to B3 on 11/21/2020 went back to C4 due to positive" COVID-19 tests. (*Id.*)
>
> On December 10, 2020, Plaintiff was returned to B3 when "the same defendants from Facility B & C as well as the Warden approved B3 as a Quarantine building." (Doc. 13 at 8.) Plaintiff still suffered from virus symptoms like "coughing and short of breath with no medical staff present." (*Id.*) An x-ray on December 15, 2020, ordered by Defendant Oghuehi, showed COVID-19 pneumonia. (*Id.*) Plaintiff contends he was "constantly stating he wanted an x-ray on his lungs and chest since he was having complications with breathing properly." (*Id.*) He asserts he "would never have been exposed if [he] would not have been persistent in getting them done." (*Id.*)
>
> On December 23, 2020, Defendant Oghuehi wanted to release Plaintiff from quarantine despite Plaintiff still having COVID-19 symptoms and "no swab test was going to be given upon release." (Doc. 13 at 8-9.) Further, Plaintiff contends other inmates were "still having symptoms … and testing positive for the virus on a daily basis, so Plaintiff refused to be removed from quarantine …." (*Id.* at 9.)
>
> Plaintiff asserts it is "as if Facility B Medical and Custody wanted the virus to conceive more deadly variants throughout the facility without regards for Plaintiff's health." (Doc. 13 at 9.) He contends he could die prematurely from the damage caused by COVID-19 "mixed with his underlying health condition (high blood pressure)." (*Id.*) He states his exposure to COVID-19 "was not part of the sentence that the judge handed down to Plaintiff at his sentencing hearing for his committment [sic] offense." (*Id.*) Plaintiff contends the virus is "still being brought in by staff and is floating around the CDCR system in California and there is no telling when Plaintiff could be exposed against and lose his breathing for good." (*Id.*)

(*See* ECF No. 15.)

///

///

///

### B. Summary of CDCR's Administrative Review Process

#### 1. Healthcare Grievances

CDCR's healthcare grievance process consists of two levels: (1) an institutional-level review conducted by the Health Care Grievance Office; and (2) a headquarters-level review conducted by the Health Care Correspondence and Appeals Branch. Cal. Code Regs. tit. 15, §§ 3999.225-3999.227. The process "provides an administrative remedy to patients under health care's jurisdiction for review of complaints of applied health care policies, decisions, actions, conditions, or omissions that have a material adverse effect on their health or welfare. *Id.* § 3999.226(a). In the grievance, prisoners must document all information known and available to them regarding the issue, and "include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement." *Id.* § 3999.227(g)(1). If prisoners do not have information to identify involved staff member(s), then they must "provide any other available information that may assist in processing the health care grievance." *Id.* § 3999.227(g)(2). Prisoners cannot add new claims during the grievance process. *Id.* §§ 3999.227(a), 3999.229(a)(3). Only issues addressed in the headquarters-level review are deemed exhausted. *Id.* § 3999.230(i)–(j).

#### 2. Custody Grievances

Effective June 1, 2020, and relevant here, the California prison grievance system had two levels of review.[4] Cal. Code Regs. tit. 15, § 3480, *et seq.* Pursuant to this system, an inmate may "dispute a policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." *Id.* § 3481(a). Inmate claimants are required to "describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge[.]" *Id.* § 3482(c). In response, the inmate claimant will receive a written

---

[4] The inmate grievance process was further revised by emergency regulations that took effect in January 2022 and by subsequent emergency regulations. Cal. Code Regs. tit. 15 §§ 3480–3487.

decision from the Institutional or Regional Office of Grievances clearly explaining the reasoning for the Reviewing Authority's decision as to each claim. *Id.* § 3481(a). The inmate claimant has the ability to submit a written appeal concerning one or more claims to dispute the decision by the Institutional or Regional Office of Grievances, and in response will receive a written decision from the Office of Appeals clearly explaining the reasoning for the decision as to each claim. *Id.* Generally, "[c]ompletion of the review process by the Office of Appeals constitutes exhaustion of all administrative remedies available to a claimant within the Department." *Id.* § 3486.

**C. Undisputed Material Facts ("UMF")**[5]

1. Plaintiff is currently housed at Avenal State Prison.
2. The alleged incidents referred to in this action occurred at PVSP.
3. Plaintiff sued 30 defendants, including 2 medical defendants, Chief Medical Executive Dr. Onyeje and Ifeoma Ogbuehi, a nurse practitioner who provided medical care to Plaintiff.
4. The remaining defendants are custody officers and the former warden.
5. Plaintiff filed a healthcare grievance (PVSP HC 2000633) on December 22, 2020.[6] (ECF No. 5804, Ex. B ("602 HC)" to Declaration of K. Martin.)
6. He alleged that he contracted COVID-19 due to the transfer of apparently uninfected persons from Facility C4 to B3. (*Id.* at 1.)
7. He alleged that he had been in contact with individuals who had interacted with infected staff members and days later, these unnamed staff members tested positive and did not

---

[5] *See* Defendants' Statement of Undisputed Facts, (ECF No. 58-2), and Plaintiff's Separate Statement of Genuine Disputes in Support of Opposition to Defendant's Motion for Summary Judgment (ECF No. 61 at 35-78).

Plaintiff disputes UMF 6, 7, 8, 9, 10, and 11. (*See* ECF No. 61 at 48-53.) However, Plaintiff fails to raise a genuine dispute and does not cite contradictory evidence. UMF 6, 7, 9, 10, and 11 are supported by the statements in the relevant grievance. (*See* Ex. B, ECF No. 58-4.)

Unless otherwise indicated, all other disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

[6] Plaintiff purportedly disputes UMF 5. However, Plaintiff admits he "filed a healthcare grievance (PVSP 2000633) on December 22, 2020 for an Institutional Level Response." (ECF No. 61 at 37.) UMF 5 is deemed undisputed.

come to work.[7] (*Id.*)

8. He alleged that the "administration at PVSP" exposed him to COVID-19 because inadequate staff testing procedures and the lack of contact tracing at the institution allowed COVID-19 to spread and caused him to contract COVID-19. (*Id.*)

9. His grievance further claimed that adequate testing procedures and contact tracing would have prevented him from getting infected. (*Id.*)

10. He alleged that the institution was not providing showers every day and the air blowing through the ventilation was dry with no humidity. (*Id.*)

11. He alleged that Nurse Practitioner Ogbuehi had lifted his quarantine status even though he was not tested for COVID-19 and exhibited symptoms. (*Id.*)

12. On March 2, 2021, Plaintiff received an institutional-level response to his healthcare grievance which advised that staff testing was carried out according to the *Plata* court order on June 11, 2020.[8] (*Id.* at 2.)

13. The response explained that baseline testing was completed statewide on July 17, 2020, and that CDCR and CCHCS had protocols in place that followed the recommended guidelines for surveillance testing.[9] (*Id.*)

14. The response further explained that Plaintiff was properly released from isolation per

---

[7] Plaintiff admits that certain staff "entered the institution (KVSP) without informing medical and supervisory staff that they had symptoms of the Covid-19 virus. Plaintiff came in contact with this staff through conservation with these staff and inmates who conversated with them . . . and days later they tested positive for the virus and did not show up to work." (ECF No. 61 at 48-49.) As previously noted, UMF 7 is deemed undisputed.

[8] Plaintiff disputes UMF 12. However, Plaintiff admits he received an institutional-level response to his healthcare grievance advising that staff testing was carried out according to the *Plata* Court order. (ECF No. 61 at 54.) Plaintiff's additional argument that testing was not carried out according to the *Plata* Court order does not raise a genuine dispute of material fact regarding the advisory statement contained in the institutional-level response. (*Id.* at 54-55.) UMF 12 is therefore undisputed.

[9] Plaintiff disputes UMF 13, arguing that "[o]f course the response is going to explain that baseline testing was completed statewide on July 17, 2020, and that CDCR and CCHCS had protocol in place that followed the recommended guidelines for surveillance testing." (ECF No. 61 at 56.) UMF 13 is therefore deemed undisputed.

recommendations for quarantines set forth by the Centers for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease in Correctional and Detention Facilities*.[10] (*Id.*)

15. The response also advised that the issues his healthcare grievance raised concerning transfer, shower schedules, and ventilation were custody issues and could only be resolved through appropriate custody channels.[11] (*Id.* at 3.)

16. Despite receiving this direction, Plaintiff never submitted a custody grievance addressing these issues.[12] (*Id.*; ECF No. Declaration of J. Burns ("Burns Decl.") ¶¶ 6-7 and Ex. 1; ECF No. 58-5, Declaration of H.E. Moseley ("Moseley Decl.") ¶¶ 7-9 and Ex. 2.)

17. Plaintiff then submitted his healthcare grievance to the headquarters level of review.[13] (Martin Decl. ¶ 7; 602 HC and 602 HC Grievance Attachment.)

18. In that submission, Plaintiff alleged for the first time that the "administration" did not inform him that three building staff, Officers Phillips, Rodriguez, and Hernandez had

---

[10] Plaintiff disputes UMF 14, arguing that "[e]ven though the response explained that [Plaintiff] was properly released from isolation per recommendations for quarantines set forth by the Centers for Disease Control and Prevention, Interim Guidance on Management of Coronavirus Disease in Correctional and Defendant Facilities, he should not have been released." (ECF No. 61 at 57.) Plaintiff's argument admits the contents of the response such that UMF 14 is undisputed.

[11] Although Plaintiff disputes UMF 15, he admits that he was advised that the issues his healthcare grievance raised concerning transfer, shower schedules, and ventilation were custody issues and could only be resolved through appropriate custody channels. (ECF No. 61 at 58.) UMF 15 is therefore undisputed.

[12] Plaintiff disputes UMF 16, asserting that he "never submitted a grievance addressing these issues because the custody issues in the Institutional Response that were recommended never directed Plaintiff to the administrative grievance process." (ECF No. 61 at 59.) Plaintiff's assertion includes an admission that he never submitted a custody grievance regarding these issues. Plaintiff's remaining arguments concerning healthcare jurisdiction and the substance of his grievance interview do not raise a genuine dispute of material fact. (*Id.* at 60-61.) UMF 16 is therefore deemed undisputed.

[13] Although Plaintiff disputes UMF 17, he admits that he "submitted his healthcare grievance to the headquarters' level of review on April 1, 2021." (ECF No. 61 at 62.) UMF 17 is therefore undisputed.

tested positive for COVID-19, and that as a result, Plaintiff could not self-quarantine and protect himself.[14] (*Id.*)

19. On July 18, 2021, Plaintiff received a headquarters' level response pertaining to this grievance.[15] (*Id.*)

20. This response affirmed the adequacy and appropriateness of the medical response to the situation—including the staff testing, surveillance, and the lifting of Plaintiff's isolation order.[16] (*Id.*)

21. Plaintiff did not submit any other appeals or grievances related to the allegations in his first amended complaint during the relevant timeframe.[17] (Burns Decl. ¶¶ 6-7, Ex. 1; Moseley Decl. ¶¶ 7-9, Ex. 2.)

**D. Parties' Positions**

Defendants argue that Plaintiff failed to properly exhaust available administrative remedies against all defendants, except Nurse Practitioner Ogbuehi. First, Defendants assert Plaintiff improperly attempted to grieve custody-related issues though the healthcare grievance process, and the response to his grievance specifically advised Plaintiff that the issues concerning transfers, shower schedules, and ventilation were custody issues and could only be addressed through the custody-grievance process. Despite receiving this directive, Plaintiff never submitted

---

[14] Although Plaintiff purports to dispute UMF 18, Plaintiff admits that he "mentioned Officers Phillips, Rodriguez and J.L. Hernandez for the first time in the Headquarters' Level of Review mentioning that the Administration did not inform him that the three (3) building (B3) staff had tested positive for Covid-19, and that as a result, [Plaintiff] could not self-quarantine and protect himself." (ECF No. 61 at 64.) UMF 18 is therefore undisputed.

[15] Plaintiff claims UMF 19 is disputed, but Plaintiff admits he received a headquarters' level response on July 18, 2021. (ECF No 61 at 66.) UMF 19 is undisputed.

[16] Plaintiff disputes UMF 20, but admits that the response says it affirmed the adequacy and appropriateness of the medical response to the situation. (ECF 61 at 66-67.) Plaintiff's dispute as to the adequacy and appropriateness does not raise a genuine dispute regarding the statements made in the headquarters' level grievance response. UMF 20 is deemed undisputed.

[17] Plaintiff claims UMF 21 is undisputed, but Plaintiff admits he did not submit any other appeals or grievances related to the allegations in his first amended complaint. (ECF No. 61 at 75.) UMF 21 is therefore undisputed.

a custody grievance addressing those issues. Because Plaintiff never properly exhausted his custody-related claims concerning prisoner transfers, showers, and ventilation, he is barred from pursuing those claims against the 28 custody defendants named in this case.

Second, Defendants contend Plaintiff improperly raised new issues when he appealed his grievance to the second level, alleging for the first time that the administration did not inform him that three building staff, Officers Phillips, Rodriguez, and Hernandez, had tested positive for Covid-19, and that as a result, Plaintiff could not self-quarantine and protect himself. Plaintiff's attempt to raise this issue at the second level of review did not exhaust his administrative remedies for that claim because administrative remedies are not exhausted as to any new issue or person that was not included in the original grievance. Defendants therefore contend that Plaintiff failed to properly exhaust claims against Defendants Phillips, Rodriguez, and Hernandez raised for the first time in his healthcare grievance appeal.

Third, Defendants contend that Plaintiff failed to properly identify staff in his healthcare grievance. Specifically, Defendants allege that Plaintiff's grievance does not name any healthcare executive or custody officials or describe their specific conduct. The grievance only identified and described the conduct of Nurse Practitioner Ogbuehi. Defendants therefore conclude that Plaintiff failed to properly exhaust claims against any defendant other than Nurse Practitioner Obguehi.

In his opposition, Plaintiff asserts that Defendants' motion is meritless, and the record demonstrates that he pursued and completed all available remedies that were required. Plaintiff contends that because he followed the proper procedures and obtained a final denial before filing, no factual basis exists to support Defendants' claim of non-exhaustion. Plaintiff further argues that reasonable jurors could find that he did exhaust or that remedies were unavailable. In particular, Plaintiff asserts that he timely filed his healthcare grievance, PVSP HC 2000633. Being housed in a Quarantine Building, he was under health care's jurisdiction and had a right to grieve applied health care policies, decision, actions, conditions, or omissions that had a material adverse effect on his health or welfare under Cal. Code Regs. tit. 15, § 3999.226(a). He was limited to the use of one 602 HC to describe the specific complaint that related to his health care

and provided available information that explained the administration's transfer of inmates between housing units C4 and B3 (Quarantine Buildings), in which he was involved and which had to be approved by medical staff and high-ranking custody staff. Plaintiff asserts that while the names of involved staff could not be ascertained at the time, the grievance process is only required to alert prison officials to a problem, and more facts of the exact staff that approved inmates to be transferred can be ascertained through discovery.

Plaintiff argues that reviewers of his healthcare grievance, including at the headquarters' level, ignored the fact that Plaintiff was under health care's jurisdiction once he was exposed to Covid-19, and housed in a quarantine building. Plaintiff admits that there really is no definition for Quarantine Buildings in CDCR regulations, but he posits that there are several definitions in the regulations that could relate to a quarantine building set up by CDCR Health Care Services, referencing "Health Care Treatment Areas," "Locked Unit," "Outpatient Housing Unit," and "Specialized Health Care Housing," citing Cal. Code Regs. tit. 15, § 3999.98. Plaintiff reiterates that he was in health care's jurisdiction being housed in two different Quarantine Buildings after being exposed to Covid-19, and he had a right to grieve applied health care policies, decisions, actions, conditions or omissions that had a material adverse effect on his health or welfare, citing the healthcare grievance regulation, Cal. Code Regs. tit. 15 § 3999.226(a). He argues that shower and ventilation in the Quarantine Buildings were conditions of his care environment.

Plaintiff additionally argues that during his grievance interview it was never explained that he had to add all the names of staff involved in the issue or that some of the issues could not be raised due to being non-medical custody (Housing), Non-medical/custody (Not our Jurisdiction (NOJ), NOJ facility conditions. Plaintiff asserts that it was not until he received the institutional response from Onyeje that it was documented that "the issue(s) of Housing is Non-Medical/Custody (Housing), Non-Medical/Custody (Not Our Jurisdiction) (NOJ), NOJ – facility conditions/showers, and his recommendation to Plaintiff was to address his concerns, not issues with a Correctional Counselor, other appropriate custody staff or through the Institutional Classification Committee process." (ECF No. 61 at 17.) Plaintiff asserts that none of these recommendations have to do with the administrative grievance process and it does not state in the

response that this is the proper channel to resolve the grievance process on these issues. Plaintiff further contends that because Onyeje was the initial reviewer of the grievance, then he should have determined if the grievance was administrative or clinical. If administrative, then the grievance should not have been processed and instead returned to Plaintiff informing him that certain issues were non-medical. As a final matter, Plaintiff indicates that he "mentioned several Correctional Staff on the CDCR 602 HC Grievance form(s), that worked in B3 and had Covid-19 symptoms, in his originally submitted grievance, and then mentioned their names in his grievance to the headquarter-level of review.

In reply, Defendants assert that Plaintiff failed to properly exhaust administrative remedies for three claims pertaining to custodial issues, as well as any claims of negligence or wrongdoing against custody officials, and those claims should be dismissed. Plaintiff failed to resolve issues concerning inappropriate transfers, infrequent showers, and ventilation using the custody grievance process. Plaintiff's placement in a quarantine building did not obviate the requirement that he grieve custody issues through the custody grievance process. Plaintiff was in CDCR's custody while under quarantine and was required to follow CDCR's grievance procedures to properly exhaust administrative remedies. Moreover, the institutional-level response to Plaintiff's grievance explicitly advised him that the allegations concerning transfer, shower schedules, and ventilation were custody issues and could only be resolved through appropriate custody channels. Plaintiff's grievance history shows he knows how to access and navigate both the healthcare and custody grievance processes, filing two healthcare grievances at PVSP in 2018 and 2020 and three custody grievances at PVSP between September 2020 and May 2021. Plaintiff does not contend that he was ever denied access to the custody grievance process or thwarted from filing grievances.

Even if excused from grieving his custody issues through the custodial grievance process, Plaintiff's healthcare grievance still would have failed to provide sufficient notice of any particular Defendant's involvement or wrongdoing because it failed to identify any specific Defendant or establish any connection between Plaintiff's claims and a particular Defendant's

purported misconduct.[18] With the exception of Defendant Obguehi, Plaintiff's grievance did not name any defendant and did not describe how their specific acts or omissions had an adverse impact on him. To the extent that Plaintiff added allegations related to Defendants Phillips, Rodriguez, and Hernandez in his appeal of the institutional response, those claims do not qualify as notice and are not exhausted.

**E. Analysis**

The Court finds that PVSP HC 2000633 did not exhaust Plaintiff's claims regarding transfers, showers, or ventilation raised against the custody defendants. In responding to PVSP HC 2000633, prison officials clearly informed Plaintiff that institutional placement (housing), showers, and facility conditions (ventilation) could only be resolved through appropriate custody channels. UMF 15. Specifically, the institutional level response to Plaintiff's 602 HC stated:

> While California Correctional Health Care Services health care providers are responsible for documenting health factors to be considered in making placement decisions, custody is responsible for determination of appropriate institutional placement and housing assignment. As such, it is recommended you address your concerns with your Correctional Counselor, other appropriate custody staff, or through the institutional Classification Committee process.
>
> Programming such as showers is not a health care services issue over which California Correctional Health Care Services has jurisdiction. As such, your concerns should be addressed through the appropriate custody channels at your institution.
>
> Facility conditions is not a health care service issue over which California Health Care Services has jurisdiction. As such, your concerns should be addressed through the appropriate custody channels at your institution.

(Ex. B to Martin Decl., 602 HC at 7-8.) It is undisputed that Plaintiff did not file a custody grievance addressing his claims concerning transfer, shower schedules, and ventilation. UMF 16.

Plaintiff argues that because he was housed in quarantine buildings at PVSP after being exposed to COVID-19, he was within health care's jurisdiction, (*see* ECF No. 61 at 8, 18), and he had a "right to grieve applied health care policies, decisions, actions, conditions or omissions that had a material adverse effect on his health or welfare," (*id.* at 18), including showers and

---

[18] Defendants note that even with Defendant Ogbuehi, Plaintiff only alleged that Defendant Ogbuehi improperly revoked his isolation status. Plaintiff's grievance does not assert a connection between inadequate testing, contact tracing, shower, and ventilation allegations.

ventilation in quarantine buildings, condition of his environment of care, (*id.*). As Defendants point out, Plaintiff does not cite any authority establishing that custody issues arising in quarantine buildings must be grieved using the healthcare grievance process.

Plaintiff also argues that he was not informed that he had to file a custody (administrative) grievance, either in his interview or in the institutional level response, which recommended he address his concerns with a Correctional Counselor, or other appropriate custody staff, or through the Institutional Classification Committee process. (ECF No. 61 at 16-17.) However, it is undisputed that the institutional level response specifically advised Plaintiff that institutional placement (housing), showers, and facility conditions (ventilation) could only be resolved through appropriate custody channels. UMF 15. Plaintiff was aware of custody grievance process, having submitted two healthcare grievances at PVSP in 2018 and 2020, (*see* Ex. A to Martin Decl.), and three custody grievances at PVSP between September 2020 and May 2021, (*see* Ex. 2 to Moseley Decl.), but he never submitted a custody grievance addressing his institutional placement (housing), showers, and facility conditions (ventilation) issues, (UMF 16). Plaintiff does not allege or otherwise meet his burden to demonstrate that the custody grievance process was effectively unavailable to him.

The Court therefore concludes that because Plaintiff failed to file a custody grievance raising his claims regarding institutional placement (housing), showers, and facility conditions (ventilation), Plaintiff failed to properly exhaust his administrative remedies for those claims against the custody defendants. *See Calderon v. Koenig*, No. 19-cv-07949-HSG, 2021 WL 3675210, at *6 (N.D. Cal. Aug. 19, 2021) (finding plaintiff failed to properly exhaust administrative remedies regarding Eighth Amendment claims raised in healthcare grievance, where prison officials' response to healthcare grievance clearly informed him that custody issues could not be pursued in a healthcare grievance and should be addressed through custody channels, and plaintiff failed to file custody grievance raising the claim); *cf. York v. Cate*, No. 13-cv-00868-JST (PR), 2015 WL 535824, at *6 (N.D. Cal. Feb. 9, 2015) (finding prisoner failed to exhaust administrative remedies for claim regarding contraband surveillance watch ("CSW") procedures raised in healthcare grievance where third-level response to healthcare grievance clearly informed

him that any challenges to CSW procedures could not be addressed in a health care appeal and should be raised in a separate appeal, and plaintiff failed to appeal his claim).

Additionally, the Court finds that PVSP HC 2000633 did not exhaust administrative remedies as to allegations against Defendants Phillips, Rodriguez, and Hernandez. It is undisputed that Plaintiff alleged in his appeal for the first time that the "administration" did not inform him that three building staff, Officers Phillips, Rodriguez, and Hernandez had tested positive for COVID-19, and that as a result, Plaintiff could not self-quarantine and protect himself. UMF 18. Administrative remedies are not exhausted as to any new issues or person later named that was not included in the originally submitted grievance. *See* Cal. Code Regs. tit. 15, § 3999.229(a)(3); *Martin v. Basnett*, Case No. 17-cv-06263-YGR (PR), 2020 WL 4505565, at *11 (N.D. Cal. Aug. 5, 2020) (to exhaust any claims against defendants not originally named in inmate's appeal, he is "required to submit a separate appeal raising any claims" about those defendants' involvement."); *see also Smith v. Mendoza*, No. 19-03750 BLF (PR), 2021 WL 930706, at *9 (N.D. Cal. Mar. 10, 2021) (concluding plaintiff did not exhaust his claims as to defendants mentioned only in an "upper-level appeal," but were not named in the original CDCR Form 602). Plaintiff later named Officers Phillips, Rodriguez, and Hernandez at the appeal level and did not identify or attribute any misconduct to them. Accordingly, the Court finds that PVSP HC 2000633 failed to exhaust Plaintiff's administrative remedies as to Defendants Phillips, Rodriguez, and Hernandez because it did not give adequate notice that he challenged any conduct by these defendants.

Finally, the Court finds that PVSP HC 2000633 did not exhaust administrative remedies as to any remaining claims against the custody officials, Defendants Ron Godwin, R. Kuhn, D. Davis, D. Marquez III, M. Solis, A. Salas, J. Rios, J. Teater, N. Greene Jr., E. Molina, Elizalde III, C. Kerber, J. Montano, D. Cardenas, C. Caldera, J. Black, J. Melendez, R. Ledesma, J. Fogal, L. Ybarra, T. Verbeek, A. Desfosses, J. Martin, T. Ramos, A. Davidson, Phillips, Rodriguez, Hernandez, and the medical executive, Defendant O. Onyehe.

Under governing regulations, a grievance must provide any information known and available to the prisoner regarding the issue, and "include any involved staff member's last name,

first initial, title or position, and the date(s) and description of their involvement." *Id.* § 3999.227(g)(1). If prisoners do not have information to identify involved staff member(s), then they must "provide any other available information that may assist in processing the health care grievance." *Id.* § 3999.227(g)(2). Plaintiff was required to comply these grievance procedures. *Jones*, 549 U.S. at 218 (holding that the level of detail necessary in an administrative grievance to properly exhaust a claim is determined by the prison's applicable grievance procedures). Plaintiff's grievance did not name the above-listed custody defendants or the medical executive defendant. Indeed, the only defendant named in Plaintiff's grievance is Defendant Ogbuehi. The grievance also does not provide any information that would put officials on notice that the specific custody officials or medical executive (Defendant Onyeje) were involved in any of the allegations in Plaintiff's grievance. Plaintiff's grievance alleged that he contracted COVID-19 due to the transfer of apparently unaffected persons from Facility C4 to B3, he had been in contact with individuals who had interacted with infected staff members, and days later, these unnamed staff members tested positive and did not come to work, the "Administration at PVSP" exposed him to COVID-19 because inadequate staff testing procedures and the lack of contact tracing at the institution allowed COVID-19 to spread and caused him to contract COVID-19, adequate testing procedures and contact tracing would have prevent him from getting infected. UMF 6-9. Plaintiff additionally alleged in his grievance that the institution was not providing showers every day and the air blowing through the ventilation was dry with no humidity. UMF 10. There is no reference in the grievance to custody officials, only a general reference to "Administration at PVSP" and "administration," and no mention of a medical executive. Nor is there any other information that would put officials on notice that specific custody officials or a medical executive were responsible for the allegations in Plaintiff's grievance regarding contact tracing, testing procedures, or other claims, such as dates involving staff testing. Plaintiff also does not include a description of the Defendants' involvement in his allegations. (Ex. B to Martin Decl., 602 HC.)

This differs from the situation in *Reyes v. Smith*, 810 F.3d 654, 658-59 (9th Cir. 2016), where the denial of the grievance indicated that prison officials had identified the doctors on the

committee who made the medical decision at issue. Here, there is no indication in any grievance response that prison officials were aware of any specific custody official or medical executive involved in any of the actions or omissions at issue in the grievance, including testing procedures and contact tracing. (Ex. B to Martin Decl., 602 HC.;UMF 12-15, 20.) KVSP HC 2000633 would not have put officials on notice of Plaintiff's claims against Defendants Ron Godwin, R. Kuhn, D. Davis, D. Marquez III, M. Solis, A. Salas, J. Rios, J. Teater, N. Greene Jr., E. Molina, Elizalde III, C. Kerber, J. Montano, D. Cardenas, C. Caldera, J. Black, J. Melendez, R. Ledesma, J. Fogal, L. Ybarra, T. Verbeek, A. Desfosses, J. Martin, T. Ramos, A. Davidson, Phillips, Rodriguez, Hernandez, and O. Onyehe. *See Mundy v. Sacramento Cnty. Jail Med. Staff*, No. 1:22-CV-00401-KES-SAB (PC), 2025 WL 2840999, at *9 (E.D. Cal. Oct. 7, 2025), report and recommendation adopted, No. 1:22-CV-0401 KES SAB (PC), 2026 WL 825759 (E.D. Cal. Mar. 25, 2026) (dismissing defendants because prisoner's "failure to follow prison regulations and name the medical staff at issue" did not satisfy exhaustion requirements).

As a final matter, the Court finds that KVSP HC 2000633, as admitted by Defendants, exhausted administrative remedies as to Plaintiff's claim that Defendant Ogbuehi improperly revoked his isolation status. (ECF No. 62 at 8 n.9; UMF 11.)

## IV. Conclusion and Recommendation

Based on the above, the Court finds that all defendants, with the exception of Nurse Practitioner Ogbuehi, are entitled to summary judgment because Plaintiff did not exhaust available administrative remedies as to his claims against them prior to filing suit. Accordingly, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 14) be granted; and
2. This action proceed only on Plaintiff's claim against Defendant Ogbuehi alleging improper revocation of Plaintiff's quarantine status.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 26, 2026**

/s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE